Thomas M. Daniel, Esq.
Jacob B. Nist, Esq.
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska  99501
(907) 279-8561
(907) 276-3108 (Facsimile)
tdaniel@perkinscoie.com
jnist@perkinscoie.com

Attorneys for Defendants NANA Management Services, LLC d/b/a Purcell Security Services and Anchorage Parking Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HOWARD HUGHES,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PURCELL SECURITY, et al.,<br><br>　　　　　Defendants. | Case No. 3:05-cv-0014-tmb |

**DEFENDANTS NANA MANAGEMENT SERVICES, LLC
AND ANCHORAGE PARKING AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT**

Defendants NANA Management Services, LLC d/b/a Purcell Security Services ("Purcell") and Anchorage Parking Authority ("APA") hereby move for summary judgment pursuant to Fed. R. Civ. P. R. 56.  Summary judgment is proper because there is no genuine issue of material fact that Purcell and APA cannot be held liable for the claims asserted by the plaintiff under the United

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb　　　　　- 1 -　　　　　[11402-0014/AA061980.019]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

States and Alaska Constitutions. Even if Purcell and APA could be held liable, the plaintiff could not produce sufficient evidence to support his claim. As such, summary judgment is proper.

## FACTUAL BACKGROUND

On January 28, 2004, Elaina Miller ("Miller") was working as a security officer for Purcell at the bus station on Sixth Avenue in Anchorage, Alaska (the "Transit Center"). *See* Exhibit 7, Ex. 7, Hughes Dep. ("Hughes Dep.") at 6-13. Donna Katie Edwards ("Edwards") was also at the Transit Center, but was overheard soliciting a patron for prostitution.[1] Ex. 1. She was also in possession of cigarettes, but was underage. Ex. 1. As a result, Miller contacted APD, who ticketed her, and Miller filled out a "ban statement" for Ms. Edwards which prohibited her from entering the Transit Center for three months. Ex. 1.

Despite being informed that she was required to leave the Transit Center, Ms. Edwards remained to speak to some people. Ex. 7, Hughes Dep. at 13-15. One of these individuals was Hughes and the other was his friend, Russell Dunkin. Ex. 7, Hughes Dep. at 18-19. Edwards approached Hughes and handed him her ban statement for him to read. Ex. 7, Hughes Dep. at 12. Hughes thinks that this was the first time that he and Edwards had spoken to each other.[2] Ex. 7, Hughes

---

[1] This was not the first time that Edwards had been observed soliciting for prostitution at the Transit Center. Approximately three months prior, she had been banned from the Transit Center for two months for the same activity and for having a crack pipe in her possession. Ex. 1.

[2] Since that time, Hughes has gotten to know Edwards because she is dating Hughes' friend. Ex. 7, Hughes Dep. at 10-11.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Dep. at 11-12. Hughes thinks it was strange that Edwards would come up to him and give him her ban statement to read. Ex. 7, Hughes Dep. at 67-68.

After approximately 10-15 seconds, Officer Miller noticed that Edwards had not left the Transit Center and Miller walked up to Edwards, Dunkin and Hughes and told Edwards that she needed to leave. Ex. 7, Hughes Dep. at 18-19, 26. Miller then turned to Dunkin, who had been loitering in the Transit Center for an hour and a half, and asked him which bus he was catching. Ex. 7, Hughes Dep. at 19; Ex. 3. In response, Dunkin immediately left the Transit Center without saying a word. Ex. 7, Hughes Dep. at 19. Hughes thought Miller was discourteous for asking Dunkin what bus he was catching. Ex. 7, Hughes Dep. at 23.

I. **Hughes Was Convinced that Officer Miller Is a Racist Because She Questioned People Talking to Edwards.**

Miller then asked Hughes what bus he was catching. Ex. 7, Hughes Dep. at 19-20. Hughes replied that he was catching bus 45. *Id.* at 19-20. Bus 45 had just left the Transit Center and Miller asked Hughes why he did not catch it. *Id.* at 20, 27. Miller then told Hughes that he had been at the Transit Center too long and that he would have to leave. Ex. 7, Hughes Dep. at 20-21.

Hughes believes that Miller was questioning him because he is African-American. Ex. 7, Hughes Dep. at 24-25. Hughes has come to this belief because Miller asked Edwards, an Alaskan Native, to leave the Transit Center after she had been banned for prostitution, but did not leave. Ex. 7, Hughes Dep. at 24. Hughes also believes that Miller was prejudiced against African-Americans because she had questioned Hughes and Dunkin (who are both African-Americans) after they

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

were talking to Edwards.³ Ex. 7, Hughes Dep. at 24. Hughes admits that the only people questioned by Miller were people who were talking to Edwards. Ex. 7, Hughes Dep. at 25.

Because Hughes believed Officer Miller was a racist and "acting stupid," he informed Miller that he would not leave the bus station. Ex. 7, Hughes Dep. at 21-22. His exact words were that she "need[ed] to get the fuck out of my face." Ex. 7, Hughes Dep. at 21-22; Ex. 5.

## II. Hughes Was Detained After He Refused to Leave the Property and the Police Escorted Hughes Off the Property 10 Minutes Later.

Miller left Hughes and returned with two other security officers – Jason Cronk and Gordon Swieter. *Id.* at 33-34. Miller informed Hughes that, although there was a two-hour limit for people waiting for buses at the Transit Center, that did not mean that Hughes could miss his bus and loiter in the Transit Center for two hours. *Id.* at 32. Officer Swieter then informed Hughes if he was not catching his bus, then he was loitering and needed to leave the Transit Center and that if Hughes did not leave that they would call the police. *Id.* at 37-38; Ex. 5. Hughes said that he was not doing anything to warrant being evicted from a public facility and that he would not leave. *Id.* at 38, 47. The security officers then asked Hughes to come with them, but Hughes refused to do so. *Id.* at 47.

The security officers then handcuffed Hughes and led him to the office until the Anchorage Police Department arrived approximately 10 minutes later.

---

³ Edwards also approached another African-American man, named "George." Ex. 7, Hughes Dep. at 22. Miller asked George whether or not Edwards had solicited him for prostitution. Ex. 7, Hughes Dep. at 23.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb                - 4 -                [11402-0014/AA061980.019]

*Id.* at 44-45; Ex. 5. Hughes swore loudly at the security officers and refused to comply with their requests. Ex. 7, Hughes Dep. at 48.

The police escorted Hughes off the property, informed him that he would be arrested if he returned within 60 days and released him. Ex. 7, Hughes Dep. at 42-43.

### III. Hughes Filed a Series of Complaints as a Result of Being Banned from the Transit Center.

Hughes filed a complaint with the Anchorage Equal Rights Commission as a result of the incident at the Transit Center. Ex. 7, Hughes Dep. at 51. The Commission found that there was no evidence of discrimination and dismissed his complaint. Hughes filed suit against Purcell, APA and the Municipality of Anchorage alleging various violations of the United States and Alaska Constitutions. He also added a claim for conspiracy to violate his constitutional rights. Despite the various claims, they all boil down to Hughes' contention that Officer Miller's actions were racially motivated. Ex. 7, Hughes Dep. at 14-16; 96.

### ARGUMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the court finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and of identifying those portions of the record which demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The nonmoving party can overcome such a showing

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

only by setting forth specific facts that could support a jury verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986). Allegations, speculations, or conclusions, as well as inadmissible evidence, are insufficient to meet this burden. *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *cert. granted*, 503 U.S. 958 (U.S. 1992), and *aff'd*, 508 U.S. 49 (U.S. 1993); *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1998), *amended*, 46 Empl. Prac. Dec. (CCH) ¶ 37,996 (9th Cir. 1988).

A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552. There can be no genuine issue of material fact where the nonmoving party has failed to show the existence of an essential element to that party's case. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

I.  **Hughes Cannot Make a Constitutional Claim for Money Damages Against Purcell or APA.**

The only claims Hughes has pled against Purcell and APA are claims under the United States and Alaska Constitutions. As a matter of law, Hughes cannot recover money damages against these Defendants. Therefore, Hughes' claims must fail as a matter of law.[4]

---

[4] Hughes has also prayed that "defendant E. Miller should be removed from any type of law enforcement position where she has control over innocent people that could be harmed by her acts or actions through Racial Profiling." Arguably, this is a request for injunctive relief. The propriety of such an

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

### A. Hughes cannot prove that Purcell or the APA had an official policy or custom of discrimination.

Claims asserted under the Constitution of the United States are brought pursuant to 42 U.S.C. § 1983. However, the doctrine of respondeat superior does not apply in § 1983 actions. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). In order to impose liability for money damages on a private corporation such as Purcell or a public corporation such as APA, a plaintiff must demonstrate an official policy or custom of the corporation caused the alleged deprivation of constitutional rights.[5] A private corporation can be held liable under § 1983 for its employees' constitutional violations only if an official corporate policy caused the violation. *Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990); *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993).

In order to demonstrate this "official policy," Hughes must demonstrate that: (1) he possessed a constitutional right of which he was deprived; (2) the defendant has a policy; (3) the policy amounts to a deliberate indifference to Hughes' constitutional rights; and (4) the policy was the moving force behind the

---

injunction is obviously problematic. In any event, this request is <u>moot</u> because Ms. Miller is not a party to this action and Purcell no longer employs her as a security guard.

[5] Indeed, in order to survive dismissal, a plaintiff under 42 U.S.C. § 1983 must plead facts demonstrating that there is an official policy of discrimination. *Brown v. Costello*, 905 F.Supp. 65, 74-75 (N.D.N.Y 1995); *Marran v. Marran*, 376 F.3d 143, 156 (3rd Cir. 2004). Hughes has utterly failed to do so. Judgment should be granted in favor of Purcell and APA on this basis alone.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb                    - 7 -                    [11402-0014/AA061980.019]

constitutional violation. *Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal citation omitted). As will be discussed below, Hughes has no evidence that he was discriminated against. However, even if Hughes could make this showing, he has no proof of a discriminatory policy employed by either Purcell or the APA.[6]

A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam). APA and Purcell have adopted such a policy as part of the contract between the two to provide security services. This policy, entitled "Policies, Standards, Responsibilities & Other Information for APA Contracted Security Officers" is attached hereto as Exhibit 8. The policy is distributed to all security officers in the Transit Center and contains an explicit provision that security officers are <u>prohibited from discriminating</u>. Ex. 8 at 7. Rather than exhibiting "indifference" to Hughes' constitutional rights, the policy specifically seeks to preserve Hughes' constitutional right against race discrimination. Hughes has not presented any evidence that either Purcell or APA has an official policy of race discrimination.

---

[6] Hughes makes no allegation that APA contributed to his alleged constitutional injury in any way. Instead, Hughes thought that he should sue APA just because they hired Purcell. Ex. 7, Hughes Dep. at 55, 60-61.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb                - 8 -                [11402-0014/AA061980.019]

### B. Hughes cannot bring a claim for damages under the Alaska Constitution because he has alternative adequate legal remedies.

Under the United States Constitution, such an implied right of action is commonly referred to as a Bivens suit. *McGrew v. State*, 106 P.3d 319, 324 (Alaska 2005). However, the Alaska Supreme Court has never held that a plaintiff has a right to bring a damages claim under the Alaska Constitution. *Id.* ("We have never decided whether a Bivens-like remedy is available for violations of the Alaska Constitution."); *Brown v. Ely*, 14 P.3d 257, 261 (Alaska 2000) ("We have neither adopted nor rejected the Bivens approach with respect to state constitutional violations."). Assuming that such a suit may be allowable under Alaska law under some circumstances, it is not appropriate in this case.

Each time the Alaska Supreme Court has considered the issue of whether a Bivens claim may be allowed under the Alaska Constitution, the Court has rejected the theory because there has been an alternative remedy available under Alaska law. *Dick Fischer Dev. No. 2, Inc. v. Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992) ("We are also hesitant to extend the Bivens decision, and will not allow a claim for damages except in cases of flagrant constitutional violations where little or no alternative remedies are available."); *see also, Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73-74, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (refusing to extend Bivens action to plaintiff "whose lack of alternative tort remedies was due solely to strategic choice"); *McGrew v. State*, 106 P.3d 319, 324 (Alaska 2005) ("At least in context of this case, the theoretical availability of an IIED claim would be an alternative remedy that obviates any need for a Bivens claim. We therefore do not need to approve a Bivens remedy here.").

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

The Alaska Supreme Court has held that alleged victims of race discrimination (as Hughes claims to be) have an alternative remedy – a claim under Alaska's anti-discrimination statutes. *Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896, 909 n.23 (Alaska 1991) (remedies available under AS 18.80). Indeed, Hughes availed himself of alternative remedies when he filed a discrimination complaint before the Anchorage Equal Rights Commission. Ex. 7, Hughes Dep. at 49-52.[7] With such alternative remedies available, Hughes cannot assert a direct claim for damages under the Alaska Constitution.

## II. Hughes Can Produce No Evidence that Race Discrimination Played a Part In His Ban From the Transit Center.

Even assuming that Hughes could assert a constitutional race discrimination claim, his claim fails for a more fundamental reason – there is no evidence that would permit a reasonable jury to conclude that Hughes was the victim of race discrimination. Because both disparate treatment under Title VII and § 1983 claims require a showing of intentional discrimination, the Ninth Circuit typically adopts the proof model articulated under Title VII. *FDIC v. Henderson*, 940 F.2d 465, 471-72 (9th Cir. 1991); *Peters v. Lieuallen*, 746 F.2d 1390, 1393 (9th Cir. 1984) (because plaintiff failed to establish intentional discrimination under Title VII, claims under §§ 1981 and 1983 must also fail); *cf Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 538 (9th Cir. 1982).

---

[7] The Anchorage Equal Rights Commissions' determination is attached hereto as Exhibit 6.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb   - 10 -   [11402-0014/AA061980.019]

The federal courts have adopted a three-part burden shifting framework (the "pretext" analysis) when analyzing discrimination cases under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). Under this analysis, once the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant, who must rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-03; *Burdine*, 450 U.S. at 253-54. Once the nondiscriminatory reason is articulated by the defendant, the burden then shifts back to the plaintiff to prove that the defendant's articulated reasons are a mere pretext for what was, in fact, a discriminatory or retaliatory action. *McDonnell Douglas*, 411 U.S. at 802-03; *Burdine*, 450 U.S. at 253-54. "[T]he mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

Purcell and APA have clearly articulated a non-discriminatory reason for Officer Miller's questioning of Mr. Hughes – he was socializing with a known prostitute who had failed to leave the Transit Center after being so ordered. When Officer Miller asked what bus he was catching, he told her that he was getting on a bus which had just left the station. Hughes informed her that he would not leave the Transit Center and became loud and discourteous – shouting profanities. There is simply no evidence that Officer Miller's actions were motivated by discrimination.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

In order to withstand summary judgment, Hughes' burden of showing that the reasons articulated by Purcell and APA for his ban from the Transit Center were pretext depends on whether Hughes is relying on circumstantial or direct evidence. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). If a plaintiff is able to show direct evidence of discriminatory animus, then the plaintiff only needs to show "very little" evidence of pretext to demonstrate a genuine issue of material fact. *Id.* "'[D]irect' evidence refers only to evidence (such as racist or sexist statements) that proves the fact of discriminatory animus without the need for substantial inference." *Id.* at 1096, n.8; *see also, Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (direct evidence where employer referred to plaintiff as a "dumb Mexican"); *Dominguez-Curry v. Nevada Trans. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) (supervisor's statements that "he wished he could get men to do [woman employees'] jobs," that "women have no business in construction," and "women should only be in subservient positions" constituted direct evidence of discriminatory animus). The mere fact that the plaintiff suffered an action which may be regarded as unfair does not constitute direct evidence. *See Coghlan*, 413 F.3d at 1096. Hughes has not pointed to any direct evidence of discrimination.

Instead, Hughes is relying on circumstantial evidence of discrimination. If a plaintiff is relying on circumstantial evidence of discrimination to show pretext, then the plaintiff must produce "specific and substantial" evidence to defeat an employer's motion for summary judgment. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). Hughes' purported

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb         - 12 -         [11402-0014/AA061980.019]

evidence of discrimination does not rise to the level of specific and substantial evidence.

Hughes believes that Officer Miller is a racist because: (1) he believed that she was discourteous; and (2) his belief she had banned more "people of color" than other security guards. Hughes' subjective belief that Officer Miller was discourteous because she was a racist (rather than discourtesy as the result of his association with a prostitute, a belief that he lied about what bus he was waiting for) does not rise to the level of "specific and substantial evidence." Such subjective personal judgments are insufficient to preclude summary judgment. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir.) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact" of discrimination); *Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir.) (plaintiff could not prove pretext based on her subjective feeling that her infractions did not warrant discharge); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010 (9th Cir. 1986) (holding that the plaintiff's subjective personal judgments did not raise a genuine issue of material fact). As to Hughes' belief that Officer Miller banned more "people of color" from the bus station than other security guards, this also does not rise to the level of "specific and substantial evidence." Hughes has no idea whether others who were banned from the Transit Center were banned for a good reason, and therefore cannot claim that they were banned for a discriminatory reason. Ex. 7, Hughes Dep. at 59-60. Again, Hughes' purported "evidence" that Officer Miller was a racist amounts to nothing more than speculation, conjecture and unsupported conclusory statements. As such, summary judgment is proper.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb           - 13 -                    [11402-0014/AA061980.019]

### III. Purcell and APA are Entitled to Summary Judgment on Hughes' Conspiracy Claim Because the Alleged Conspirators Are Not Parties to this Lawsuit and Hughes Has No Evidence of a Conspiracy.

Apart from his constitutional claims, Hughes is also alleging a conspiracy to violate his civil rights. Presumably, this is a claim under 42 U.S.C. § 1985. Hughes' claim fails for two reasons. First, none of the alleged conspirators are parties to this litigation.[8] Second, Hughes himself admits that he has no evidence of a conspiracy. Ex. 7, Hughes Dep. at 85-86. Purcell and APA are entitled to summary judgment on this claim.

### CONCLUSION

Hughes has no evidence that Officer Miller's actions at the Transit Center on January 28, 2004 were racially motivated or that there was a conspiracy to deprive him of his civil rights. Even if there were such evidence, Hughes might be able to bring a claim against Officer Miller directly, but he cannot bring constitutional claims against Purcell or APA. As such, Purcell and APA are entitled to summary judgment.

---

[8] Hughes identifies the potential conspirators as Security Officers Miller, Swieter and Cronk. Ex. 7, Hughes Dep. at 64-65. Additionally, Hughes identifies Shawn Tebo as a conspirator who was a patron of the bus system who corroborated the officer's version of events that Hughes was detained because he was violent, abusive and loud. *Id.* at 66. Hughes also believes that Belinda Davis, who found against Hughes in his Equal Rights Commission complaint, might be a conspirator. *Id.*

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb    - 14 -    [11402-0014/AA061980.019]

DATED: July 21, 2006.

        **PERKINS COIE LLP**
        Attorneys for NANA Management Services,
        LLC and Anchorage Parking Authority


By  /s/ Thomas M. Daniel
     Thomas M. Daniel
     Alaska Bar No. 8601003
     Jacob B. Nist
     Alaska Bar No. 0211051
     Perkins Coie LLP
     1029 W. Third Avenue, Suite 300
     Anchorage, Alaska 99501
     (907) 279-8561
     (907) 276-3108 (Facsimile)
     Email: tdaniel@perkinscoie.com

I hereby certify that on July 21, 2006, a true and correct copy of the foregoing was served by mail on Howard Hughes and electronically on Mark Ertischek

s/Thomas M. Daniel

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Hughes v. Purcell Security
Case No. 3:05-cv-0014-tmb    - 15 -    [11402-0014/AA061980.019]