Thomas M. Daniel, Esq.
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)

Attorneys for Defendants NANA Management Services, LLC d/b/a Purcell Security Services and Anchorage Parking Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

HOWARD HUGHES,

        Plaintiff,

v.

PURCELL SECURITY, et al.,

        Defendant.

Case No. A05-0014 CV (JWS)

**DECLARATION OF GORDON SWIETER**

I, Gordon Swieter, hereby declare under penalty of perjury, that:

1. I am a former security officer employed by NANA Management Services, LLC d/b/a Purcell Security Services ("Purcell") at the Transit Center on Sixth Avenue in Anchorage, Alaska. I have direct and personal knowledge of the facts attested to below.

2. On or about January 28, 2004, I was working at the Transit Center. At approximately 5:30, I was in the security office with Officer Miller. Officer Miller had just banned an individual, Donna Katie Edwards, from the Transit

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Center for solicitation of prostitution. She and I noticed Ms. Edwards had not left the Transit Center after being banned and was talking to two individuals. One of the individuals is the plaintiff in this action, Howard Hughes. We considered that Ms. Edwards may be soliciting these two men for prostitution.

3. I observed Officer Miller tell Ms. Edwards to leave and Ms. Edwards exited the premises. Officer Miller then spoke to one of the men that Ms. Edwards was speaking to and he quickly left the premises.

4. I then observed Officer Miller question Mr. Hughes, who became very agitated. I heard Officer Miller request assistance for another security officer working at the Transit Center. Officer Jason Cronk responded to the call.

5. Officers Miller and Cronk came back to the office and asked me if I would speak to Mr. Hughes because he was cussing at them. I agreed.

6. I approached Mr. Hughes and asked him if there was a problem and why he had not caught the bus he said he was waiting for. In response, Mr. Hughes told me, "go fuck yourself, I changed my mind."

7. I informed Mr. Hughes that he needed to catch his bus and leave. I also informed him that if he did not, he would either have to leave the Transit Center or I would have to call the Anchorage Police Department to escort him off the property. In response, Mr. Hughes stepped toward me and started screaming at me. I tried to get Mr. Hughes to calm down, but he refused. Mr. Hughes also refused to come with me to discuss the situation at the security office.

8. Mr. Hughes started to swing at me, at which point Officer Cronk and I restrained Mr. Hughes and put him in handcuffs. We brought Mr. Hughes to the security office, where he refused to cooperate and was screaming obscenities. At

one point, Mr. Hughes charged Officer Miller. We decided to ban Mr. Hughes from the bus station because he had been aggressive, was loitering, and was using loud discourteous and abusive language in violation of the Transit Center's code of conduct and because he refused to leave the Transit Center when we instructed him to do so.

9. Approximately 10 minutes later the Anchorage Police Department arrived and I briefed them on the situation. They took custody of Mr. Hughes.

10. Exhibit 1 to the accompanying motion are the true and correct copies of the ban statements for Donna Katie Edwards. These statements are made at the time a person is banned by an officer with direct knowledge of the underlying circumstances. It is the regular practice of Purcell to make such a report whenever an individual is banned from the Transit Center.

11. Exhibit 2 to the accompanying motion is a true and correct copy of the rules of conduct for the Transit Center. This brochure is provided to the public by security officers.

12. Exhibit 3 and Exhibit 10 to the accompanying motion are true and correct copies of incident reports filled out by Officer Miller and Officer Cronk, respectively. These reports relate to the incident with Mr. Hughes. These reports are made shortly after an incident by an officer with direct knowledge of the facts therein. It is the regular practice of Purcell to make such a report whenever there is any significant incident at the Transit Center or where security officers use any degree of force.

13. Exhibit 4 is a true and correct copy of a statement Purcell took from Shawn Tebo, a witness to the incident with Mr. Hughes. This statement was made

shortly after the incident with Mr. Hughes. It is the regular practice of Purcell to take such statements whenever there is a significant security incident at the Transit Center.

14. Exhibit 8 to the accompanying motion is a true and correct copy of the policies applicable to the security officers at the Transit Center in January, 2004. These policies are distributed to all security officers who work at the Transit Center. The policy prohibits any kind of discrimination. Purcell also prohibits discrimination, in any form, on the basis of race.

15. Exhibit 9 is a true and correct copy of the incident report that I filled out in January, 2004 relating to the incident with Mr. Hughes. All the statements made therein are true.

DATED: 7/20/06

*Gordon W. Swieter* (signature)
Gordon Swieter

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108